Mia WILSON, Plaintiff,

v.

SYSCO FOOD SERVICES OF DALLAS,
INC. and Carroll Bonneau,
Defendants.

No. 3:95–CV–1555–R.

United States District Court,
N.D. Texas,
Dallas Division.

Aug. 22, 1996.

Michael R. Lipscomb, Law Office of Michael R. Lipscomb, Denton, TX, for plaintiff.

Gary Lynn Ingram, Phillip Ray Jones, Jackson & Walker, Dallas, TX, for defendants.

### MEMORANDUM OPINION AND ORDER

BUCHMEYER, Chief Judge.

Now before the Court is Defendants' Motion for Summary Judgment, filed March 22, 1996, and Defendants' Objection to Plaintiff's Affidavit in Opposition to Defendants' Motion for Summary Judgment, filed June 20, 1996.[1] Plaintiff Mia Wilson brings this action against her former employer, SYSCO Food Services of Dallas, Inc. ("SYSCO"), and its employee, Carroll Bonneau, alleging sexual harassment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, deprivation of her constitutional right to due process with respect to her employment status with SYSCO, and state law causes of action for breach of contract, breach of the duty of good faith and fair dealing, wrongful discharge, intentional infliction of emotional distress, fraudulent misrepresentation, and invasion of privacy.

Defendants now move for summary judgment on the following grounds: (1) Bonneau cannot be held liable under Title VII because he does not meet the Title VII definition of "employer"; (2) Plaintiff's sexual harassment claims based on alleged activities that occurred prior to July 5, 1994, are time-barred; (3) Plaintiff cannot establish a prima facie case of sexual harassment; (4) Plaintiff's due process claim fails for lack of state action; and (5) all of Plaintiff's state law claims fail as a matter of law.[2]

For the reasons stated below, Defendants' Objection to Plaintiff's Affidavit is **DENIED** and Defendants' Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART**.

### I. BACKGROUND

This case arises out of Plaintiff's employment at SYSCO, a Dallas corporation in the business of marketing food service products. Plaintiff began her employment with SYSCO in April of 1994 as a marketing/sales representative. One of Plaintiff's primary duties in this position was to sell as many SYSCO products as possible to each account in her assigned sales area.

Defendant Bonneau was Plaintiff's immediate supervisor and trainer at SYSCO. Plaintiff contends that during the two-week train-

---

1. Plaintiff's Affidavit constitutes Plaintiff's sole response to Defendants' motion.

2. Defendants also argue that a retaliation claim based on SYSCO's alleged failure to rehire Plaintiff, contained in Plaintiff's amended complaint, is barred by failure to exhaust administrative remedies. This Court does not consider this argument because Plaintiff has not filed any amended complaint and such claim is not before the Court.

ing period following her hire, Bonneau would require her to end the work day in certain bars discussing the day and reviewing accounts. Bonneau allegedly would linger long after Plaintiff had departed and recount to her on each following day his interactions with various women at the bars who had expressed sexual interest in him.

Plaintiff states in her affidavit that "[o]n more than one occasion during the scope and course of my employment with SYSCO Food Services of Dallas, Inc., Bonneau suggested that I take him home with me and give him some sex. I made it known to Bonneau that his sexual advances were unwelcome." (Wilson Aff. ¶ 3). Plaintiff does not provide any dates for Bonneau's alleged propositions.

Plaintiff asserts that on another occasion, Bonneau suggested that she have sex with any one of SYSCO's customers if such activity was necessary to maintain that customer's business. (Wilson Aff. ¶ 4). This Court interprets this incident to be the same as that described in Plaintiff's answer to interrogatories, in which Plaintiff contends that at some time in May 1994, Bonneau told Plaintiff that she would be expected to learn to "penetrate" the company's accounts. Based on Bonneau's manner and tone of voice, Plaintiff asked Bonneau if he was implying that she should sleep with the account holders. Bonneau allegedly laughed and said, "Whatever it takes." Bonneau also allegedly asked Plaintiff if she had ever had sex with any customers. (Defs.' Mot.Summ.J., Ex. C, at 6–7).

Plaintiff states that one customer complained to Bonneau after Plaintiff refused the customer's sexual advances. Plaintiff explained to Bonneau that the customer had attempted to have sex with her. Bonneau allegedly reprimanded Plaintiff for refusing to comply and removed Plaintiff from the account. Plaintiff interpreted Bonneau's actions as "punishment" for her complaint about the customer, and thereupon "feared the loss of my job if I complained to Bonneau about the repeated suggestions and lurid comments he himself made to me in my presence about having sex with myself and others." (Wilson Aff., ¶ 4). Plaintiff also feared filing a complaint against Bonneau

with the company despite its policy on sexual harassment "because Bonneau demonstrated to me through the process of punishing me for refusing to have sex with a customer that if I did complain to the company about Bonneau's sexual harassment, I would lose my job with the company." (Wilson Aff., ¶ 4).

On another occasion, Bonneau allegedly "bragged" to Plaintiff that the previous evening at a bar he stared at and was sexually excited by a woman who wore thong panties underneath her see-through dress. (Wilson Aff. ¶ 6). Plaintiff's answer to interrogatories dates this incident "around the end of July." (Defs.' Mot.Summ.J., Ex. C, at 8). According to Plaintiff, "Bonneau repeatedly made lurid sexual comments to me about other women during the course and scope of my employment with SYSCO." (Wilson Aff., ¶ 6).

Bonneau allegedly also made advances toward Plaintiff's mother. Plaintiff states that such advances were made in her presence and for the purpose, as Bonneau allegedly later expressed to Plaintiff, to get her mother to have sex with him. Plaintiff asserts that after her mother refused to sleep with Bonneau, Bonneau "continually" referred to her mother as an "uppity bitch." (Wilson Aff. ¶ 5).

Plaintiff further states that while employed at SYSCO, Bonneau called her attention to a young woman named Terry Flanagan, and stated that Flanagan would be willing to have sex with him in order to get a job at SYSCO. According to Plaintiff, Bonneau "suggested" to her that she would have to have sex with him in order to keep her job. Bonneau allegedly hired Flanagan to replace Plaintiff after her termination. (Wilson Aff. ¶ 7).

Plaintiff asserts in her affidavit that Bonneau possessed authority to increase or decrease her sales territory and to assign her either more or less profitable accounts, both of which directly affected her sales figures. Plaintiff further asserts that Bonneau had the authority and ability to change any sales figures that she submitted. According to Plaintiff, "[m]y continued employment with SYSCO Food Services of Dallas, Inc. depend-

ed on my sales figures which Bonneau controlled." (Wilson Aff. ¶ 2).

Plaintiff was discharged for poor performance on August 19, 1994. The decision to terminate her employment with SYSCO was made by Kyle Killingsworth, Vice President of Human Resources for SYSCO, Bonneau, and Tommy Huffines. (Killingsworth Aff. ¶ 7).

## II. ANALYSIS

### A. Defendants' Opposition to Plaintiff's Affidavit

■ Defendants move this Court to strike Plaintiff's affidavit on the ground that it was not timely filed. Plaintiff filed her affidavit on June 10, 1996. Defendants argue that Plaintiff was required to filed her opposing affidavit by April 11, 1996, the deadline for Plaintiff's response to the motion for summary judgment. Although an affidavit supporting a motion for summary judgment must be filed with the motion, Fed.R.Civ.P. 6(d), opposing affidavits may be filed up until one day before the hearing. Fed.R.Civ.P. 6(d), 56(c).[3] No hearing date having been set on Defendants' motion, Plaintiff has nonetheless filed her affidavit more than one day before the Court's consideration of the motion. Accordingly, this Court will consider Plaintiff's affidavit in deciding the motion for summary judgment.

### B. Standard for Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure allows summary judgment only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R.CIV.P. 56(c). All reasonable doubts and inferences must be decided in the light most favorable to the party opposing the motion, *Thornbrough v. Columbus and Greenville R.R. Co.,* 760 F.2d 633, 640 (5th Cir.1985), and as long as there appears to be some evidentiary support for the disputed allegations, the motion must be denied. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S.

242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Coke v. General Adjustment Bureau,* 640 F.2d 584, 595 (5th Cir.1981 (en banc)).

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which it believes demonstrate the absence of genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). After the movant has presented a properly supported motion for summary judgment, the nonmovant may then oppose the motion by going beyond the pleadings and by its own affidavits or by depositions, answers to interrogatories, and admissions on file designate specific facts showing a genuine issue of material fact. *Id.* at 324, 106 S.Ct. at 2553. Summary judgment will be granted against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552.

### C. Title VII

#### 1. Liability of Bonneau

■ Title VII prohibits discrimination by an "employer" on the basis of sex. 42 U.S.C. § 2000e–2. Title VII defines "employer" as "a person engaged in an industry affecting commerce ... and any agent of such a person." 42 U.S.C. § 2000e(b). According a liberal construction to the term "any agent," the Fifth Circuit has found immediate supervisors to be employers under Title VII "when delegated the employer's traditional rights, such as hiring and firing," *Harvey v. Blake,* 913 F.2d 226, 227 (5th Cir.1990), or " 'if he participated in the decisionmaking process that forms the basis of the discrimination.' " *Hamilton v. Rodgers,* 791 F.2d 439, 442–42 (5th Cir.1986) (citing *Jones v. Metro. Denver Sewage Disposal Dist.,* 537 F.Supp. 966, 970 (D.Colo.1982)). The Fifth Circuit has also considered factors such as whether the supervisor was responsible for the terms and

---

**3.** Moreover, the district court had discretion to consider opposing affidavits offered on the day of hearing. *Beaufort Concrete Co. v. Atlantic States*

*Constr. Co.,* 352 F.2d 460, 462–63 (5th Cir.1965), *cert. denied,* 384 U.S. 1004, 86 S.Ct. 1908, 16 L.Ed.2d 1018 (1966).

conditions of plaintiff's employment, or for plaintiff's work assignment within the company. *Garcia v. Elf Atochem North America,* 28 F.3d 446, 451 (5th Cir.1994). "The purpose of extending 'employer' status to immediate supervisors is to hold liable those with power over the plaintiff which exceeds that of mere co-workers." *Id.*

 A supervisor can only be held liable under Title VII, however, in his official capacity as an agent of the employer. *Grant v. Lone Star Co.,* 21 F.3d 649, 652 (5th Cir.), *cert. denied,* — U.S. ——, 115 S.Ct. 574, 130 L.Ed.2d 491 (1994). An individual employee may not be held personally liable for damages under Title VII. *Id.* at 652–53. The purpose of the "agent" provision in § 2000e(b) was to incorporate respondeat superior liability into Title VII, and the Fifth Circuit has expressly declined to extend the liability of individual employees beyond the respondeat superior principle. *Id.* at 652.

 The evidence presented by Plaintiff is sufficient to create a factual issue with respect to the scope of Bonneau's authority to hire and fire and to control the terms and conditions of Plaintiff's employment. Summary judgment is therefore not appropriate with respect to any Title VII liability that Plaintiff seeks against Bonneau in his official capacity. However, since individual employees cannot be held personally liable under Title VII, Plaintiff's claim against Bonneau in his individual capacity is without merit. *See Garcia,* 28 F.3d at 451.

### 2. Limitations

In Texas, a Title VII plaintiff must file her EEOC charge within 300 days after the occurrence of the alleged discriminatory practice. 42 U.S.C. § 2000e–5(e)(1); *Griffin v. City of Dallas,* 26 F.3d 610, 612–13 (5th Cir.1994). Defendant contends that since Plaintiff filed her EEOC charge on May 1, 1995, any sexual harassment claims based on

alleged activities that occurred prior to July 5, 1994, are time-barred.

 The statutory time limit is not a jurisdictional prerequisite to suit, but acts as a statute of limitations and is subject to waiver, estoppel, and equitable tolling. *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393, 102 S.Ct. 1127, 1132–33, 71 L.Ed.2d 234 (1982). The Fifth Circuit recognizes an equitable exception to this limitation " '[w]here the unlawful employment practice manifests itself over time, rather than as a series of discrete acts.' " *Waltman v. Int'l Paper Co.,* 875 F.2d 468, 474 (5th Cir.1989) (citing *Abrams v. Baylor College of Medicine,* 805 F.2d 528, 532 (5th Cir.1986)). This exception is known as a continuing violation. *Id.* To establish a continuing violation, a plaintiff must show that at least one incident of harassment extended into the statutory period. *Id.* at 474–75. The alleged discriminatory acts also must be closely enough related to constitute a continuing violation. In this circuit the following non-exhaustive factors are relevant to such a determination: (1) subject matter of the alleged acts; (2) frequency of the alleged acts; and (3) degree of permanence associated with the alleged acts. *Berry v. Board of Supervisors of Louisiana State Univ.,* 715 F.2d 971, 981–82 (5th Cir. 1983).

 Although Plaintiff's affidavit does not indicate the dates of any alleged acts of harassment, Plaintiff's answers to interrogatories do provide dates for many of the same incidents. The summary judgment record accordingly shows that the "thong panties" incident occurred in late July, 1994.[4] Plaintiff has thus demonstrated that at least a genuine issue of fact exists as to whether a harassing incident occurred within the statutory period.

All the incidents alleged by Plaintiff involve the same subject matter—sexual harassment—thereby meeting the first *Berry*

4. Plaintiff's answer to interrogatory no. 17 also describes two other acts of alleged harassment that occurred after July 5, 1994. Specifically, Plaintiff states that during a telephone conversation sometime in August, 1994, Bonneau related to her an incident in which a man at a bar tried to pull his head down to the man's crotch, and

that, about two weeks before she was terminated, Plaintiff and Bonneau had a conversation in a car during which Bonneau told Plaintiff, "You are a very attractive lady and I have found myself extremely attracted to you." (Defs.' Mot. Summ.J., Ex. C, at 9).

**1010**

factor. *See Waltman,* 875 F.2d at 475. The second factor, frequency, requires that the incidents of harassment be recurring and not isolated. *Id.* The Fifth Circuit has noted that a claim of hostile environment sexual harassment usually involves a continuing violation, and that in looking at the frequency of harassment, "a court should review the pattern and frequency of the harassment and determine whether a reasonable person would feel that the environment was hostile throughout the period that formed the basis of the plaintiff's claim." *Id.* at 476. Plaintiff has provided evidence of several specific incidents of harassment that took place during a roughly five-month span of time as well as evidence that Bonneau's sexual comments about other women were ongoing. Plaintiff's evidence is sufficient to show that the acts were continuous throughout the period that forms the basis of her complaint. The third factor, permanence, involves analysis of whether the act is such that it "should trigger an employee's awareness of and duty to assert his or her rights," or should indicate to the employee that the adverse consequences of the act would likely continue even absent a continuing intent to discriminate. *Berry,* 715 F.2d at 981. The court in *Waltman* noted that "[a]cts of harassment that create an offensive or hostile environment generally do not have the same degree of permanence as, for example, the loss of promotion." 875 F.2d at 476. In the instant case, the only act of alleged harassment that indisputably had this quality of permanence was Plaintiff's termination, which occurred within the statutory period. Since Plaintiff has alleged facts which demonstrate a genuine issue of material fact with regard to the existence of a continuing violation, summary judgment is inappropriate on this issue.[5] *See Waltman,* 875 F.2d at 476.

### 3. Sexual Harassment

Plaintiff alleges that Bonneau sexually harassed her on several occasions and fraudulently manipulated her performances figures

in retaliation for her refusal to grant him sexual favors, and that her termination also was in retaliation for her rebuff of Bonneau's advances. Under Title VII sexual harassment can take either of two forms: hostile work environment or *quid pro quo.* Plaintiff appears to assert both types of sexual harassment.

■ **a. Hostile work environment.** In order to establish a claim against an employer for a hostile work environment, the plaintiff must show the following: (1) the employee belongs to a protected group; (2) the employee was subject to unwelcome sexual harassment; (3) the harassment complained of was based upon sex; (4) the harassment complained of was sufficiently pervasive so as to alter the conditions of employment and create an abusive working environment; and (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action. *Jones v. Flagship Int'l,* 793 F.2d 714, 719–20 (5th Cir. 1986), *cert. denied,* 479 U.S. 1065, 107 S.Ct. 952, 93 L.Ed.2d 1001 (1987).

Defendants argue that Plaintiff cannot establish a prima facie case of hostile environment sexual harassment because she cannot demonstrate: (1) that any alleged harassment was "unwelcome"; and (2) that SYSCO knew of the alleged harassment and failed to take prompt remedial action.

■ In determining whether the alleged harasser's conduct was "unwelcome," "[t]he correct inquiry is whether [plaintiff] by her conduct indicated that the alleged sexual advances were unwelcome." *Meritor Savings Bank v. Vinson,* 477 U.S. 57, 68, 106 S.Ct. 2399, 2406, 91 L.Ed.2d 49 (1986). Defendants contend that plaintiff never indicated to Bonneau that his conduct was offensive, never gave Bonneau reasons to believe that she objected to meeting with him after work in restaurants or bars, and did not complain to any supervisor or manager at the company until after her discharge. Defendants cite, first, Plaintiff's deposition testimony in which

**5.** This Court notes that even if Plaintiff were barred from recovery on any claims based on alleged activities prior to July 5, 1994, such activities would nevertheless constitute relevant background evidence in this proceeding on other

claims not barred by the statute of limitations under Title VII. *United Air Lines, Inc. v. Evans,* 431 U.S. 553, 558, 97 S.Ct. 1885, 1889, 52 L.Ed.2d 571 (1977); *Cortes v. Maxus Exploration Co.,* 977 F.2d 195, 199 (5th Cir.1992).

she states that she spoke with the shipping coordinator at SYSCO about Bonneau getting down on her performance. (Wilson Dep., at 131–34). This Court finds no support for Defendants' contentions in this deposition excerpt. Defendants next point to deposition testimony in which Plaintiff states that when Bonneau indicated to her one July evening that he needed some "female companionship," she did not tell him directly that his conduct was offensive but "just told him that he needs to call his wife hoping that that would call his attention to get off the subject, and it didn't." (Wilson Dep., at 157). Defendants also cite Plaintiff's deposition testimony indicating that, although at some point in her employment at SYSCO Plaintiff decided to no longer meet Bonneau in locations that served alcohol, she did not communicate this rule to Bonneau because the situation never subsequently arose. (Wilson Dep., at 209). Defendants also rely on Plaintiff's admission that she never made a complaint to the company until after her discharge. While this evidence indicates that Plaintiff could have more forcefully communicated to Bonneau and others her displeasure with his conduct on certain occasions, it does not wholly refute Plaintiff's assertion in her affidavit that she "made it known to Bonneau that his sexual advances were unwelcome." Viewing the evidence in the light most favorable to the nonmovant, this Court finds that Plaintiff has sufficiently demonstrated a genuine factual dispute as to whether she indicated that the alleged acts of harassment were unwelcome.

■ Defendants also contend that SYSCO cannot be held liable because it had neither actual nor constructive notice of the alleged harassment. Although the Fifth Circuit has yet to dispel completely the uncertainty concerning the type and extent of notice to the employer necessary to sustain a sexual harassment claim under Title VII, *see Waltman*, 875 F.2d at 478, it has held that a plaintiff can show actual notice by proving that she complained to higher management, or constructive notice by " 'showing the pervasiveness of the harassment, which gives rise to the inference of knowledge or constructive knowledge.' " *Id.* (quoting *Henson*

*v. City of Dundee*, 682 F.2d 897, 905 (11th Cir.1982)).

Plaintiff has met neither of these standards. Plaintiff states in her affidavit that despite SYSCO's policy on sexual harassment, she feared that she would lose her job if she made a complaint to the company concerning Bonneau's alleged harassment. (Wilson Aff., ¶ 4). Plaintiff also concedes in her deposition that, prior to her termination, no individual in SYSCO's upper management had reason to be aware of the conduct forming the basis of her claim of sexual harassment. (Wilson Dep., at 189). The summary judgment record contains no evidence that Bonneau's conduct took place under the eye of co-workers or supervisors or that it was in any other way so pervasive that higher management must have been aware of it. According to Killingsworth, SYSCO had no knowledge of Plaintiff's complaints against Bonneau prior to receiving her letter post-termination. (Killingsworth Aff. ¶ 8). Although Plaintiff's letter constitutes sufficient notice for purposes of her *quid pro quo* claim, it did not afford SYSCO the opportunity to take prompt remedial action with respect to the alleged hostile work environment.

In this case the only employee in any supervisory capacity who had knowledge of the alleged harassment was Bonneau himself. Recently, however, the Fifth Circuit affirmed a district court ruling in which the court declined to impute the supervisor's knowledge of his own alleged conduct to defendant company for purposes of the notice requirement of a sexual harassment claim under Title VII. *See Sims v. Brown & Root*, 78 F.3d 581 (5th Cir.1996), *aff'g* 889 F.Supp. 920 (W.D.La.1995), *petition for cert. filed*, 64 U.S.L.W. 3283 (April 1, 1996) (No. 95–1946). The supervisor in *Sims* did have authority to alter the terms and conditions of plaintiff's employment. Accordingly, this Court will not impute Bonneau's knowledge to SYSCO, agency principles notwithstanding.

Because Plaintiff cannot demonstrate a genuine issue of material fact as to the element of employer notice, and Defendants are entitled to judgment as a matter of law on this element, summary judgment is appropri-

ate with respect to Plaintiff's claim for hostile work environment.

■ **b. *Quid pro quo.*** To establish a *quid pro quo* claim of sexual harassment under Title VII, Plaintiff must show the following: (1) the employee belongs to a protected group; (2) the employee was subject to unwelcome sexual harassment; (3) the harassment complained of was based on sex; (4) the employee's reaction to the harassment complained of affected tangible aspects of the employee's compensation, terms, conditions, or privileges of employment; and (5) respondeat superior. *Jones,* 793 F.2d at 721–22.

■ Defendants argue that Plaintiff's *quid pro quo* claim fails because Plaintiff cannot show that Bonneau either requested sexual favors from her or conditioned job benefits upon her acceptance of any such requests. In elaboration upon the fourth element of *quid pro quo* sexual harassment, the court in *Jones* stated that "[t]he acceptance or rejection of the harassment by an employee must be an express or implied condition to the receipt of a job benefit *or the cause of a tangible job detriment* in order to create liability under this theory of sexual harassment." 793 F.2d at 722 (emphasis added). This Court finds that Defendants have failed to show that there is no genuine issue as to whether Plaintiff's rejection of Bonneau's alleged advances played a role in her termination.

Defendants support their contention with two excerpts from Plaintiff's deposition. In the first, Plaintiff responds affirmatively to the following question:

> You told me about the incident in Joe Bee's when Mr. Bonneau made some comment to you about keeping him company and taking him home to keep him company. Is that as close as he ever got to making what I would call an outright proposition to you for sexual favors?

(Wilson Dep., at 188). In the second, Plaintiff responds negatively to the question, "Did he say or insinuate at any time that you were being terminated because you had refused his advances?" (Wilson Dep., at 227).

This testimony does not establish the absence of a genuine issue on the element of tangible job detriment. Plaintiff has produced evidence that Bonneau propositioned her on more than one occasion and even directly suggested that having sex with him would help her maintain her job. In addition, Plaintiff has produced evidence that Bonneau controlled her sales territory, accounts, and the reporting of her sales figures to higher management. The summary judgment evidence further shows that Bonneau was involved in the decision to terminate Plaintiff and that Bonneau later replaced Plaintiff with Terry Flanagan, the very woman whom Bonneau allegedly told Plaintiff would sleep with him for a job at SYSCO. Plaintiff has produced adequate summary judgment evidence from which it could be inferred that her rejection of Bonneau's sexual advances resulted in her discharge.[6]

---

6. This Court also finds that there exists a genuine factual dispute as to whether SYSCO took prompt remedial action after receiving Plaintiff's letter. Although argued only with respect to Plaintiff's hostile work environment claim, Defendants contend that SYSCO's subsequent actions constituted prompt remedial action that was reasonably calculated to end the harassment. *See Carmon v. Lubrizol Corp.,* 17 F.3d 791, 794–95 (5th Cir.1994). "What is appropriate remedial action will necessarily depend on the particular facts of the case—the severity and persistence of the harassment, and the effectiveness of any initial remedial steps." *Waltman,* 875 F.2d at 479.

Killingsworth asserts that immediately after receiving Plaintiff's letter, he met with Plaintiff and discussed her allegations in detail. He then promptly investigated, by interviewing employees

and customers, meeting with Bonneau, reviewing Plaintiff's performance history, and "[making] certain that she was treated objectively and fairly at all times during employment." According to Killingsworth, "[t]he investigation revealed absolutely no evidence of sexual harassment. Additionally, Wilson's poor sales performance and inability to satisfy customers' needs were determined to be the sole reason for her discharge." (Killingsworth Aff., ¶ 8).

While this Court commends investigation into sexual harassment allegations, the mere fact of an investigation that could not corroborate Plaintiff's allegations cannot relieve SYSCO of liability where Plaintiff has produced evidence creating a genuine factual issue as to the existence of the harassment and the role it played in the decision to terminate her.

## D. Due Process

An essential element of Plaintiff's constitutional due process claim is the existence of state action to deprive her of this right. *See Frazier v. Board of Trustees of Northwest Miss. Regional Medical Ctr.*, 765 F.2d 1278, 1283 (5th Cir.1985), *cert. denied*, 476 U.S. 1142, 106 S.Ct. 2252, 90 L.Ed.2d 697 (1986). Because Plaintiff has produced no evidence of state action, she cannot maintain this cause of action.

## E. State Law Claims

### 1. Intentional Infliction of Emotional Distress

To state a claim for intentional infliction of emotional distress, Plaintiff must allege facts to show: (1) intentional or reckless conduct; (2) that is extreme and outrageous; (3) that caused emotional distress; and (4) the emotional distress was severe in nature. *Burden v. General Dynamics Corp.*, 60 F.3d 213, 218 (5th Cir.1995); *Twyman v. Twyman*, 855 S.W.2d 619, 621–22 (Tex.1993). Defendant contends, and this Court agrees, that Plaintiff has failed to allege facts in support of the second element.

Conduct meets the "extreme and outrageous" standard only where it "has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *MacArthur v. University of Texas Health Ctr.*, 45 F.3d 890, 898 (5th Cir.1995); *see also Ugalde v. W.A. McKenzie Asphalt Co.*, 990 F.2d 239, 243 (5th Cir.1993). Liability does not extend to mere insults, indignities, threats, annoyances, or petty oppressions. *Ugalde*, 990 F.2d at 243. Even actions that may be illegal in an employment context may not constitute "extreme and outrageous" conduct for purposes of a claim for intentional infliction of emotional distress. *Id.; Rayburn v. Equitable Life Assurance Soc'y of the U.S.*, 805 F.Supp. 1401, 1410 (S.D.Tex.1992) ("even though an employer's conduct may rise to the level of illegality, 'except in the *most* unusual cases' it is not the sort of conduct, as deplorable as it may sometimes be, that constitutes 'extreme and outrageous' conduct").

Assuming for purposes of this motion that Plaintiff bases her intentional infliction of emotional distress claim on all of the acts of alleged harassment by Bonneau and SYSCO's decision to terminate her, this Court concludes that her allegations do not establish the degree of reprehensibility necessary to maintain this cause of action. The conduct at issue here is no more egregious than other conduct held not to be "extreme and outrageous" as a matter of law. *See, e.g., Cook v. Fidelity Investments*, 908 F.Supp. 438, 440 (N.D.Tex.1995) (employer's actions in subjecting plaintiff to embarrassing and humiliating yelling scenes in the presence of co-workers, including the use of racial epithets, and in allegedly giving plaintiff poor performance reviews and demoting plaintiff because of his race did not constitute "outrageous" conduct); *Garcia v. Andrews*, 867 S.W.2d 409, 410–412 (Tex.App.—Corpus Christi 1993, no writ) (manager's alleged sexual harassment of plaintiff, including observing plaintiff in a manner that made her feel as if she was being undressed, asking plaintiff if she "did her best work in the dark," and discussing sizes and shapes of men and conduct " 'in the sack' " held insufficient to constitute "outrageous" conduct).

### 2. Breach of Contract

Plaintiff claims that SYSCO breached its employment contract with Plaintiff by terminating her wrongfully and without cause and by failing to judge the Plaintiff on the basis of merit. Plaintiff offers no evidence, however, of any written or oral representations concerning her employment relationship with SYSCO.

Employment relationships in Texas are terminable at will unless modified by an specific agreement. *Mott v. Montgomery County*, 882 S.W.2d 635, 637 (Tex.App.—Beaumont 1994, writ denied). The Sales Representative Employment Agreement signed by Plaintiff at the time of her hire with SYSCO provides that "[SYSCO] may terminate Employee's employment hereunder at any time, for any reason and without cause, upon notice to Employee." (Killings-

worth Aff. ¶ 4, Ex. 1). SYSCO's employee handbook expressly provides that "SYSCO adheres to the principles of at-will employment whereby SYSCO Food Systems, Inc. and employees alike can terminate the employment relationship at any time and for any reason." (Killingsworth Aff. ¶ 4, Ex. 2). No written document expressly provides that SYSCO relinquished its right to terminate Plaintiff at-will. (Killingsworth Aff. ¶ 4). Accordingly, Plaintiff cannot establish the breach of any employment contract.

### 3. Wrongful Discharge

For the reasons discussed above, Plaintiff is also unable to establish that she was wrongfully discharged by SYSCO.

### 4. Breach of Implied Covenant of Good Faith and Fair Dealing

Plaintiff claims that her employment agreement with SYSCO contains an implied covenant of good faith and fair dealing, which SYSCO breached by failing to evaluate Plaintiff on the basis of merit and by failing to make available to her equal opportunity for promotion and advancement. Texas courts, however, have declined to find that a duty of good faith and fair dealing exists in the employer-employee relationship. *Cole v. Hall*, 864 S.W.2d 563, 568 (Tex.App.—Dallas 1993, writ dism'd w.o.j.); *Casas v. Wornick Co.*, 818 S.W.2d 466, 468–69 (Tex.App.—Corpus Christi 1991), *rev'd on other grounds*, 856 S.W.2d 732 (Tex.1993). Defendants are therefore entitled to summary judgment on this claim.

### 5. Fraudulent Misrepresentation

Plaintiff alleges that Defendant fraudulently misrepresented to her that she would be judged on the basis of merit and ability and given the opportunity to be considered for all positions opening up at SYSCO. To establish a claim for fraudulent misrepresentation, Plaintiff must show that:

(1) a material representation was made; (2) such representation was false; (3) when the speaker made it, he knew it was false, or made it recklessly without any knowledge of the truth and as a positive assertion; (4) he made it with the intention that it should be acted upon by the parties; (5) the party acted in reliance upon it; and (6) the party thereby suffered an injury. *Stone v. Lawyers Title Ins. Corp.*, 554 S.W.2d 183, 185 (Tex.1977).

Plaintiff testified that she was never told that SYSCO could not terminate her at will, was never promised or guaranteed employment for any fixed period of time, and understood that her length of employment with SYSCO would be indefinite. (Wilson Dep., at 69). Plaintiff has produced no evidence that SYSCO made any material misrepresentations of fact to Plaintiff regarding the terms and conditions of her employment.

Plaintiff also claims that "[t]he Defendant concealed facts from Plaintiff which the Defendant had an affirmative duty to disclose to the effect that the Defendant would not provide the Plaintiff with the opportunity to be evaluated on a non-discriminatory basis for transfer, promotion, or continued employment." (Pl.'s Compl. ¶ 34). Under Texas law, a "defendant's failure to disclose a material fact is fraudulent only if the defendant has a duty to disclose that fact." *Trustees of Northwest Laundry & Dry Cleaners Health & Welfare Trust Fund v. Burzynski*, 27 F.3d 153, 157 (5th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1110, 130 L.Ed.2d 1075 (1995). In the absence of an agreement to disclose, a duty to disclose arises only where there is some special relationship between the parties, such as a fiduciary or confidential relationship. *Id.* There is no evidence in this case that a special relationship of trust or confidence existed between Plaintiff and her employer. *See Reeves v. Western Co. of North America*, 867 S.W.2d 385 (Tex.App.—San Antonio 1993, writ denied) (prospective employer has no duty to disclose results of screening test for drugs or alcohol to job applicant; "even if [plaintiff] did have the status of an employee, an employment situation which is governed by the employment at will doctrine does not of itself create a special relationship"); *cf. Castillo v. Neely's TBA Dealer Supply, Inc.*, 776 S.W.2d 290 (Tex.App.—Houston [1st Dist.] 1989, writ denied) (former employer not liable for failure to disclose information

about enrolling in health insurance plan where, among other things, there was no evidence that fiduciary relation existed when employer's agents talked to the employee). Defendant is therefore entitled to summary judgment on this claim.

### 6. Invasion of Privacy

Plaintiff has alleged that Bonneau and SYSCO committed the tort of invasion of privacy through Bonneau's inquiries into Plaintiff's private affairs, particularly her sexual activities. Plaintiff has thus brought an invasion of privacy action based upon intrusion upon her seclusion, solitude and into her private affairs. The elements for such an action are: (1) an intentional intrusion upon the solitude or seclusion of another or her private affairs, which (2) would be highly offensive to a reasonable person. *Valenzuela v. Aquino*, 853 S.W.2d 512, 513 (Tex.1993); *Gill v. Snow*, 644 S.W.2d 222, 224 (Tex.App.—Fort Worth 1982, no writ). This type of invasion of privacy, however, "is generally associated with either a physical invasion of a person's property or by eavesdropping on another's conversation with the aid of wiretaps, microphones or spying." *Gill*, 644 S.W.2d at 224. This Court finds no evidence to support a claim for this form of invasion of privacy.

### III. CONCLUSION

For the reasons stated, Defendants' Objection to Plaintiff's Affidavit in Opposition to Defendants' Motion for Summary Judgment is **DENIED,** and Defendants' Motion for Summary Judgment is **GRANTED** as to Plaintiff's hostile work environment, due process and state law causes of action, and **DENIED** as to Plaintiff's *quid pro quo* sexual harassment cause of action.

It is **SO ORDERED.**