Tom **CLAYTON**, **M.D.**, a/k/a Charles T. Clayton, M.D., a/k/a Thomas M. Clayton, Appellant

v.

Susan **WISENER**, Appellee.

No. 12–03–00251–CV.

Court of Appeals of Texas, Tyler.

June 15, 2005.

Rehearing Overruled Sept. 23, 2005.

Stephen P. Carrigan, Carrigan Law Firm, LLP, Jill L. Groff, Houston, for appellant.

Timothy B. Garrigan, Stuckey & Garrigan, for appellee.

Panel consisted of WORTHEN, C.J., GRIFFITH, J., and DeVASTO, J.

---

1. Before she sued Dr. Clayton in state court, Wisener sued Medaphis in the United States District Court for the Eastern District of Texas, Lufkin Division, in an action styled *Wisener v. Medaphis Physicians Servs. Corp.*, No.

## OPINION

DIANE DeVASTO, Justice.

In six issues, Appellant Tom Clayton, M.D. challenges the trial court's entry of a judgment awarding $91,488.00 in actual damages and $200,000.00 in exemplary damages to Appellee Susan Wisener. We affirm in part and reverse and render in part.

### BACKGROUND

In 1995, Wisener went to work for Medaphis Physicians Services Corporation, a medical billing service company, as an account representative. Dr. Clayton contracted with Medaphis to perform his billing and collections for his radiology practice, and Wisener was assigned to his account. According to Wisener, in November of 1995, Dr. Clayton began calling her, making offensive comments, as well as propositions of a sexual nature, and asking inappropriate questions about her sex life with her husband.

In April of 1996, Wisener became ill and was admitted to Nacogdoches Medical Center for diagnostic testing. During her stay in the hospital, Wisener underwent a HIDA scan to determine if she had problems with her gallbladder. Dr. Clayton read the results of her HIDA scan and reported that the scan was normal. Wisener continued to suffer from abdominal pain and sought a second opinion. Her treating physicians concluded that her gallbladder was abnormal and removed the gallbladder.

On July 1, 1998, Wisener sued Dr. Clayton, alleging his conduct invaded her privacy.[1] Specifically, Wisener alleged that Dr.

9:97cv185. Wisener contends that she alleged the same facts in that case as she does in the instant case and that her federal claims against Medaphis were confidentially settled. She also contends that the claims against Dr.

Clayton, among other things, 1) asked her about her sex life with her husband, 2) asked if she "ran around on [her] husband," 3) told her to show him different private parts of her body, 4) told her to perform various sex acts on him, 5) told her he wanted to touch different parts of her body, and 6) propositioned her for sex. Wisener sought actual and exemplary damages from Dr. Clayton for his actions.

On July 21, Dr. Clayton answered Wisener's suit with a general denial. Wisener amended her petition on January 19, 2000 and included an allegation that Dr. Clayton's actions constituted intentional infliction of emotional distress. She continued to seek actual and exemplary damages.

Wisener's case went to trial on March 24, 2003. At the conclusion of the trial, the jury returned a verdict in favor of Wisener, finding that Dr. Clayton intentionally inflicted emotional distress on Wisener and intentionally intruded on her private affairs. The jury awarded Wisener $20,000.00 for past mental anguish and $72,488.00 for past lost earning capacity. The jury also found that the harm to Wisener resulted from malice and awarded her $500,000.00 in exemplary damages.[2]

On May 30, 2003, Dr. Clayton filed motions for new trial, judgment notwithstanding the verdict, and to modify the judgment, all of which were denied on July 8. He timely perfected this appeal.

## LEGAL AND FACTUAL SUFFICIENCY

In his first issue,[3] Dr. Clayton contends that the evidence was legally and factually insufficient to support the jury's findings of liability on Wisener's intentional infliction of emotional distress and invasion of privacy claims. He also contends that the evidence was insufficient to support the jury's award of damages for mental anguish and past lost earning capacity. In his second issue, Dr. Clayton contends that each of the jury's findings are immaterial and should be disregarded because the evidence to support each finding is legally and factually insufficient. Dr. Clayton makes the same arguments in issues one and two; therefore, we will consider them as one issue.

### Standard of Review

In reviewing a legal sufficiency or no evidence complaint, the appellate court must consider only the evidence and inferences tending to support the challenged findings and disregard all evidence and inferences to the contrary. If there is more than a scintilla of evidence to support the challenged findings, the no evidence challenge fails. *Leitch v. Hornsby,* 935 S.W.2d 114, 118 (Tex.1996). We may sustain a "no evidence" point only when the record discloses one of the following: (1) there is a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla of evidence, or (4) the evidence establishes conclusively the opposite of a vital fact. *See Merrell Dow Pharms., Inc. v. Havner,* 953 S.W.2d 706, 711 (Tex.1997). It is not within our province to second guess the fact finder unless only one inference can be drawn from the evidence. *See Havner*

---

Clayton in the federal court case were dismissed without prejudice for lack of federal question jurisdiction.

**2.** In its judgment, the trial court reduced the $500,000.00 exemplary damage award to $200,000.00 pursuant to section 41.008(b)(2)

of the Texas Civil Practice and Remedies Code. *See* TEX. CIV. PRAC & REM.CODE ANN. § 41.008(b)(2) (Vernon 2004).

**3.** Dr. Clayton's first issue comprises multiple sub-issues.

v. E–Z Mart Stores, Inc., 825 S.W.2d 456, 461 (Tex.1992). If the evidence furnishes some reasonable basis for differing conclusions by reasonable minds about a vital fact's existence, more than a scintilla of evidence exists. *Burroughs Wellcome v. Crye*, 907 S.W.2d 497, 499 (Tex.1995); *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex.1983).

▇▇▇▇ When conducting a factual sufficiency review, we must consider all of the evidence, including any evidence contrary to the verdict. *Plas–Tex., Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex. 1989). Furthermore, we must reverse on the basis of factual insufficiency if the court's finding is so against the great weight and preponderance as to be manifestly unjust. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex.1986). This court is not a fact finder and may not pass on the credibility of the witnesses or substitute its judgment for that of the trier of fact, even if a different conclusion could be reached on the evidence. *See Herbert v. Herbert*, 754 S.W.2d 141, 144 (Tex.1988); *Clancy v. Zale Corp.*, 705 S.W.2d 820, 826 (Tex.App.-Dallas 1986, writ ref'd n.r.e.). When a party without the burden of proof on an issue challenges the factual sufficiency of the evidence, the question is whether insufficient evidence supports the complained-of finding. *Gooch v. Am. Sling Co.*, 902 S.W.2d 181, 184 (Tex.App.-Fort Worth 1995, no writ). An assertion that the evidence is "insufficient" to support a fact finding means that the evidence supporting the finding is so weak or the evidence to the contrary is so overwhelming that the finding should be set aside and a new trial ordered. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965).

## I. Intentional Infliction of Emotional Distress

▇▇▇▇ To recover damages for intentional infliction of emotional distress, a plaintiff must establish that 1) the defendant acted intentionally or recklessly, 2) the defendant's conduct was extreme and outrageous, 3) the defendant's actions caused the plaintiff emotional distress, and 4) the resulting emotional distress was severe. *Hoffmann–La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 445 (Tex.2004).

### A. Extreme and Outrageous Conduct

▇▇▇▇ Dr. Clayton argues that the evidence was legally and factually insufficient to support a finding that his conduct was extreme and outrageous. Extreme and outrageous conduct has been defined as conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex. 1993). "Generally, liability for intentional infliction of emotional distress has only been found in those cases in which a recitation of the facts to an average member of the community would lead him to exclaim, 'Outrageous'" *See Foye v. Montes*, 9 S.W.3d 436, 440 (Tex.App.-Houston [14th Dist.] 1999, pet. denied). Liability does not extend to a defendant who conducts himself toward others with mere insults, indignities, threats, annoyances, or other trivialities. *GTE Southwest v. Bruce*, 998 S.W.2d 605, 612 (Tex.1999). The test for determining what conduct is extreme and outrageous is essentially a subjective one. *Haynes & Boone, L.L.P. v. Chason*, 81 S.W.3d 307, 309 (Tex.App.-Tyler 2002, pet. denied) (citing *Twyman*, 855 S.W.2d at 629 (Hecht, J., concurring and dissenting)).

▇▇▇▇ It is well recognized that a course of harassing conduct may support liability for intentional infliction of emotional distress. *Bruce*, 998 S.W.2d at 615. When ongoing harassment is alleged, the

offensive conduct is evaluated as a whole. *Id.* It is for the court to determine, in the first instance, whether a defendant's conduct was extreme and outrageous. *Zeltwanger,* 144 S.W.3d at 445 (citing *Bruce,* 998 S.W.2d at 616). But when reasonable minds may differ, it is for the jury, subject to the court's control, to determine whether, in the particular case, the conduct was sufficiently extreme and outrageous to result in liability. *Id.*

■ The cases discussing whether conduct is extreme and outrageous are as varied as the spectrum of facts that could conceivably constitute the tort of intentional infliction of emotional distress. Courts deciding these cases have had great difficulty in analyzing whether a set of facts rises to the level of extreme and outrageous conduct, as evidenced by the Texas Supreme Court's recent statement that "[f]or the tenth time in little more than six years, we must reverse an intentional infliction of emotional distress claim for failing to meet the exacting requirements of that tort." *See Creditwatch, Inc. v. Jackson,* 157 S.W.3d 814, 815 (Tex.2005). The threshold for what constitutes extreme and outrageous conduct sufficient to give rise to the tort of intentional infliction of emotional distress is therefore a difficult one to meet. *Chason,* 81 S.W.3d at 311.

The record, viewed in the light most favorable to Wisener, reveals that from November or December of 1995 to May of 1996, Wisener talked to Dr. Clayton three or four times a week. Wisener contends that the following conduct by Dr. Clayton supports the jury's finding that he intentionally inflicted emotional distress upon her during that time period:

1. Around the first of December 1995, during business calls at work, Dr. Clayton began asking Wisener personal questions such as her age, whether she was married, whether she had any children, what her husband did for a living, and how much money he made. She thought these matters were "none of his business."

2. Toward the end of 1995, Dr. Clayton asked her about her sex life at home and if her husband was happy with their sex life. He wanted to know how often she had sex with her husband and wanted to know her breast size. He also wanted to know if she had affairs with other men. When talking about sex, Dr. Clayton used the term "f* *k" and also discussed "blow jobs." He told her he wanted to "f* *k" at least ten times over a one month period.

3. In December 1995 or January of 1996, Dr. Clayton told her that he "wanted to go to a motel room and f* *k" and that he "wanted her ass."

4. Dr. Clayton told Wisener that her breasts were big.

5. During Wisener's hospital stay, Dr. Clayton told her to get her "ass out of bed and go collect his money." He also asked her to take her shirt off.

6. In late April or early May of 1996, after her surgery, Dr. Clayton still wanted to know if she wanted to have sex with him and if "they hurt [her] breasts during the surgery."

7. Dr. Clayton intentionally misread her HIDA scan by stating that her gallbladder was normal when her gallbladder was abnormal.

Our opinion in *Chason* is helpful to determine whether this complained-of conduct was extreme and outrageous. In that case, Lisa Chason obtained a jury verdict awarding her damages for intentional infliction of emotional distress from Haynes & Boone, L.L.P. The award arose from the publication of topless and other embarrassing photos of her by an attorney for Haynes & Boone, L.L.P. during and immediately after an administrative hearing

held in a matter between her husband and the City of Palestine. *Chason,* 81 S.W.3d at 310. Chason also complained that during the second day of the hearing, the attorney told a local newspaper reporter that "she had some photographs she would like to sell him." *Id.*

In *Chason,* this court analyzed the holdings of other courts deciding whether conduct was extreme and outrageous. *Id.* at 311–13. The cases in which the reviewing court upheld a finding of extreme and outrageous conduct or found that summary judgment evidence created a fact issue on extreme and outrageous conduct dealt with unwanted sexual advances or suggestions over a period of time as well as conduct occurring within a short time period. *See Morgan v. Anthony,* 27 S.W.3d 928, 931 (Tex.2000) (defendant's sexually suggestive comments while attempting to offer assistance to plaintiff whose car had died and continued pursuit of her after she declined such assistance created a fact issue, thus necessitating reversal of summary judgment in favor of defendant); *Bruce,* 998 S.W.2d at 612–13 (supervisor engaged in ongoing acts of harassment, intimidation, humiliation, daily use of vulgarities, and obscene behavior); *Fields v. Teamsters Local Union No. 988,* 23 S.W.3d 517, 531–33 (Tex.App.-Houston [1st Dist.] 2000, pet. denied) (employer threatened to fire employee if she did not succumb to his sexual advances; the conduct took place over a three-month period); *Gonzales v. Willis,* 995 S.W.2d 729, 736 (Tex.App.-San Antonio 1999, no pet.) (defendant repeatedly initiated sexually explicit conversations and made sexual advances in spite of plaintiff's protests, suggested he could help her get a job in return for sexual favors, and encouraged co-workers to make indecent propositions to her).

After discussing these cases, we observed that Chason complained of two iso-lated incidents, not a prolonged series of acts. *Chason,* 81 S.W.3d at 314. In holding that the conduct in *Chason* was not the sort of "flagrant or heinous facts" described in cases finding extreme and outrageous conduct, we noted that the attorney did not 1) make any indecent propositions to Chason, 2) engage in vulgar or obscene behavior, or 3) attempt to deceive Chason in order to further a personal interest. *Id.* at 313–14.

In the instant case, Dr. Clayton 1) made indecent propositions to Wisener, 2) engaged in vulgar or obscene behavior, and 3) attempted to deceive Wisener by asking her to take her shirt off after telling her that he needed to discuss the results of her test with her. The only evidence to the contrary is Dr. Clayton's testimony denying any of the actions described by Wisener. After reviewing the record, we hold that Dr. Clayton's continuous course of conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community"; therefore, the jury was within its province to judge his conduct. *See Twyman,* 855 S.W.2d at 621; *Zeltwanger,* 144 S.W.3d at 445. Under the facts of this case, we hold that the above evidence constitutes more than a scintilla of evidence to support the finding that Dr. Clayton's conduct was extreme and outrageous. After reviewing all of the evidence, we also hold that the finding that Dr. Clayton's conduct was extreme and outrageous was not so weak or the evidence contrary to the finding so overwhelming that the finding should be set aside and a new trial ordered. Dr. Clayton's first issue, as it pertains to the legal and factual sufficiency of the evidence of his extreme and outrageous conduct, is overruled.

**B. Intent**

Dr. Clayton also argues that the evidence of his intent or recklessness was legally and factually insufficient to support the verdict. Intentional infliction of emotional distress requires either that the actor intend to cause severe emotional distress or that severe emotional distress is the primary risk created by the actor's reckless conduct. *Standard Fruit & Vegetable Co. v. Johnson,* 985 S.W.2d 62, 63 (Tex.1998). Intentional conduct requires a showing that the actor desired the consequences of his act. *Behringer v. Behringer,* 884 S.W.2d 839, 842 (Tex.App.-Fort Worth 1994, writ denied); *LaCoure v. LaCoure,* 820 S.W.2d 228, 233 (Tex.App.-El Paso 1991, writ denied). An actor is reckless when he knows or has reason to know of facts that create a high degree of risk of harm to another and deliberately proceeds to act in conscious disregard of, or indifference to, that risk. *Twyman,* 855 S.W.2d at 624. Intent may be inferred from the circumstances and the conduct of the actor, not just from the overt expressions of intent by the actor. *Toles v. Toles,* 45 S.W.3d 252, 260 (Tex.App.-Dallas 2001, pet. denied). Of course, rarely will a defendant admit knowing of a substantial certainty that emotional harm would befall the victim. *Twyman,* 855 S.W.2d at 623. Juries are free to discredit the defendant's protestations that no harm was intended and to draw necessary inferences to establish intent. *Id.*

Dr. Clayton's outrageous statements and actions indicate that they were done knowingly and intentionally. Furthermore, Wisener testified that she repeatedly asked Dr. Clayton to leave her alone, but he persisted in this course of conduct. *See Morgan,* 27 S.W.3d at 931. The only evidence against this finding is Dr. Clayton's testimony that he did not engage in any of the conduct described by Wisener. After reviewing the evidence, we conclude that evidence of his intent and/or recklessness amounted to more than a scintilla and that the jury's finding was not so weak or the evidence contrary to the finding so overwhelming that the finding should be set aside and a new trial ordered. Dr. Clayton's first issue, as it pertains to the legal and factual sufficiency of the evidence of his intent, is overruled.

## C. Severe Emotional Distress

Dr. Clayton next contends that he did not cause Wisener to suffer any severe emotional distress. He argues that her mental problems were ordinary and that her previous relationships were the cause of those mental problems. Wisener contends that the evidence supporting the jury's verdict was legally and factually sufficient.

In *Bruce,* the Texas Supreme Court discussed severe emotional distress and noted that "[e]motional distress includes all highly unpleasant mental reactions such as embarrassment, fright, horror, grief, shame, humiliation, and worry." *Bruce,* 998 S.W.2d at 618. Severe emotional distress is distress that is so severe that no reasonable person could be expected to endure it. *Id.* In finding the evidence in support of severe emotional distress legally sufficient, the supreme court noted that the plaintiffs in *Bruce*

experienced a variety of emotional problems including crying spells, emotional outbursts, nausea, stomach disorders, headaches, difficulty in sleeping and eating, stress, anxiety, and depression. The employees testified that they experienced anxiety and fear because of [the defendant's] continuing harassment, especially his charges and rages. Each employee sought medical treatment for these problems, and all three plaintiffs were prescribed medication to alleviate the problems. An expert witness testi-

fied that each of them suffered from post-traumatic stress disorder.

*Bruce,* 998 S.W.2d at 618–19.

Much like the plaintiffs in *Bruce,* Wisener testified that she suffered anxiety, depression, problems in dealing with her anger, and marital and familial discord as a result of Dr. Clayton's constant harassment. She also stated that she sought medical treatment for these problems.

Kandy Stahl, Ph.D. is a clinical psychologist and chair of the psychology department at Stephen F. Austin State University. She was hired by Wisener's counsel to evaluate Wisener and testify as an expert witness in psychology. Dr. Stahl testified that Wisener experienced a significant degree of clinical depression and anxiety, which channeled into somatic symptoms such as headaches, gastrointestinal difficulties, sleep disturbances, weakness, or fatigue. This evidence of Wisener's physical and mental problems is legally sufficient to support the jury's finding that Dr. Clayton's conduct caused Wisener to suffer severe emotional distress.

According to Dr. Stahl, Wisener may have been emotionally vulnerable to the harassment because (1) she had a history of being physically abused, (2) her exhusband had problems with substance abuse, and (3) she went through a custody battle in her first marriage for her first two children. Although this evidence supports Dr. Clayton's argument, we note that Dr. Stahl also testified that Wisener has been able to resolve those issues and "overcome obstacles along the way." After reviewing the evidence, we conclude that evidence of Wisener's severe emotional distress amounted to more than a scintilla and that the jury's finding was not so weak or the evidence contrary to the finding so overwhelming that the finding should be set aside and a new trial ordered. Dr. Clayton's first issue, as it pertains to the legal and factual sufficiency of the evidence of Wisener's severe emotional distress, is overruled.

## II. Invasion of Privacy

■ Dr. Clayton next argues that the evidence was legally and factually insufficient to support a finding that he invaded Wisener's privacy. Wisener contends that the evidence supports such a finding because of Dr. Clayton's sexual harassment and intentional misreading of her HIDA scan.

■ The charge to the jury in the instant case asked if Dr. Clayton intentionally intruded on Wisener's "solitude, seclusion or private affairs." The elements of a cause of action for invasion of privacy by intrusion on seclusion are 1) the defendant intentionally intruded on the plaintiff's solitude, seclusion, or private affairs, 2) the intrusion would be highly offensive to a reasonable person, and 3) the plaintiff suffered injury as a result of the defendant's intrusion. *See Valenzuela v. Aquino,* 853 S.W.2d 512, 513 (Tex.1993); *Phar–Mor, Inc. v. Chavira,* 853 S.W.2d 710, 712 (Tex.App.-Houston [1st Dist.] 1993, writ denied). The invasion-of-privacy tort is typically associated with either a physical invasion of a person's property or eavesdropping on another's conversation with the aid of wiretaps, microphones, or spying. *GTE Mobilnet of S. Tex. Ltd. Pshp. v. Pascouet,* 61 S.W.3d 599, 618 (Tex.App.-Houston [14th Dist.] 2001, pet. denied); *Wilhite v. H.E. Butt Co.,* 812 S.W.2d 1, 6 (Tex.App.-Corpus Christi 1991, no writ); *Cornhill Ins. PLC v. Valsamis,* 106 F.3d 80, 85 (5th Cir.1997), *cert. denied,* 522 U.S. 818, 118 S.Ct. 69, 139 L.Ed.2d 30 (1997); *Wilson v. Sysco Food Svcs. of Dallas, Inc.,* 940 F.Supp. 1003, 1015 (N.D.Tex. 1996) (all citing *Gill v. Snow,* 644 S.W.2d 222, 224 (Tex.App.-Fort Worth 1982, no writ), *overruled on other grounds by Cain*

*v. Hearst Corp.,* 878 S.W.2d 577 (Tex. 1994)).

In *Cornhill,* the Fifth Circuit Court of Appeals addressed a claim for invasion of privacy where offensive comments and inappropriate advances were made toward the plaintiff. *Cornhill,* 106 F.3d at 85. The court held that the plaintiff could not recover under an invasion of privacy cause of action based on the intentional intrusion upon her solitude or private affairs because she did not allege a " 'physical invasion of a person's property or eavesdropping on another's conversation with the aid of wiretaps, microphones, or spying.' " *Id.*

The same analysis applies to the instant case. Wisener did not allege, nor did the evidence show, that Dr. Clayton physically invaded her property or eavesdropped on one of her conversations. Furthermore, there is no evidence in the record that Dr. Clayton intentionally misread her HIDA scan. All of the medical experts testified that the results of Wisener's scan were open to subjective interpretation. If anything, the evidence demonstrated that Dr. Clayton was only negligent when he read her HIDA scan and did not intentionally misread it in order to cause Wisener harm. Accordingly, Dr. Clayton's first issue, as it pertains to the legal sufficiency of the evidence to support the jury's invasion of privacy finding, is sustained.

### III. Actual Damages

Dr. Clayton next challenges the legal and factual sufficiency of the evidence to support the jury's award of $20,000.00 for past mental anguish and $72,488.00 for past lost earning capacity.

### A. Mental Anguish

To recover mental anguish damages, the plaintiff must introduce direct evidence of the nature, duration, and severity of the mental anguish, thus establishing a substantial disruption in the plaintiff's daily routine. *Parkway Co. v. Woodruff,* 901 S.W.2d 434, 444 (Tex.1995). Direct evidence may be in the form of the plaintiff's own testimony, that of a third party, or that of an expert. *Id.*

We have already concluded that the evidence was legally and factually sufficient to support a finding that Wisener suffered severe emotional distress. Therefore, we conclude that the evidence amounts to more than a scintilla of evidence to support the award of mental anguish damages. Because the evidence of mental anguish was uncontroverted, we also conclude that there is factually sufficient evidence to support the jury's findings and will not set aside the finding of the jury. *See White v. Sullins,* 917 S.W.2d 158, 162 (Tex.App.-Beaumont 1996, writ denied) (holding that it is within the province of the jury to resolve matters, such as mental anguish, that are necessarily speculative and not subject to precise mathematical calculations). Dr. Clayton's first issue, as it pertains to the legal and factual sufficiency of the evidence to support the jury's award of damages for past mental anguish, is overruled.

### B. Past Loss of Earning Capacity

Lost earning capacity concerns the impairment to one's ability to work. *Koko Motel, Inc. v. Mayo,* 91 S.W.3d 41, 51 (Tex.App.-Amarillo 2002, pet. denied). It entails the consideration of what the plaintiff's capacity to earn a livelihood actually was and assesses the extent to which it was impaired. *Id.* Moreover, courts recognize that calculating the extent of impairment constitutes an exercise in uncertainty. *McIver v. Gloria,* 140 Tex. 566, 169 S.W.2d 710, 712 (1943). So, much is left to the sound discretion of the jury. *Id.* This does not mean that it may simply journey into the realm of conjecture.

Quite the contrary, its decision must be based upon such facts as are available in the particular case. *Id.; Strauss v. Continental Airlines, Inc.,* 67 S.W.3d 428, 436 (Tex.App.Houston [14th Dist.] 2002, no pet.). The "damages [must also be] proved with that degree of certainty of which the case is susceptible." *McIver,* 169 S.W.2d at 712. And, "where the plaintiff seeks special damages for loss of his earning capacity in a particular business or profession, the amount of his earnings or the value of his services in that business must be shown with reasonable certainty." *Id.*

■ Next, the non-exclusive factors to be considered include the earnings of the injured party before and after the incident. *Id.* Her stamina and ability to work with pain and the weakness and degenerative changes that naturally result from the injury and from long-suffered pain also merit consideration. *Mayo,* 91 S.W.3d at 51. So too does logic compel that the potential of the individual, or her ability to advance in skill, job, and pay, is also relevant, assuming that the potential can be reasonably extrapolated from the evidence of the particular case. *Id.*

In the instant case, the record contains no evidence of Wisener's earnings at the time she worked for Medaphis or the value of her services. Accordingly, the jury's award of $72,488.00 for past loss of earning capacity was based on conjecture and cannot stand. Dr. Clayton's first issue, as it pertains to the legal and factual sufficiency of the evidence to support the award for past loss of earning capacity, is sustained.

### IV. Malice and Exemplary Damages

■ In his final legal and factual sufficiency challenge, Dr. Clayton argues that there is no evidence or, alternatively, factually insufficient evidence to support the jury's finding that Dr. Clayton acted with malice. We agree.

Exemplary damages are authorized under the Texas Civil Practice and Remedies Code when the claimant proves by clear and convincing evidence that the harm results from fraud, malice, or gross negligence. TEX. CIV. PRAC. & REM.CODE ANN. § 41.003(a) (Vernon 2004). The charge in Wisener's case asked the jury if Dr. Clayton acted with malice as the predicate for exemplary damages. Under current law, "malice" is defined as "a specific intent by the defendant to cause substantial injury or harm to the claimant." TEX. CIV. PRAC. & REM.CODE ANN § 41.001(7). At the time this case was tried, however, "malice" was defined as

(A) a specific intent by the defendant to cause substantial injury or harm to the claimant; or (B) an act or omission: (I) which when viewed objectively from the standpoint of the actor at the time of its occurrence involves an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and (ii) of which the actor has actual, subjective awareness of the risk involved, but nevertheless proceeds with conscious indifference to the rights, safety, or welfare of others.

Act of April 20, 1995, 74th Leg., R.S., ch. 19, § 1, 1995 Tex. Gen. Laws 108, 109, *amended by* Act of June 11, 2003, 78th Leg., R.S., ch. 204, § 13.02, 2003 Tex. Gen. Laws 847, 887.

■ The definition of malice incorporates the objective and subjective elements of the malice standard: "(1) viewed objectively from the standpoint of the actor, the act or omission must involve an extreme degree of risk, considering the probability and magnitude of the potential harm to others, and (2) the actor must have actual, subjective awareness of the risk involved, but nevertheless proceed in conscious in-

difference to the rights, safety, or welfare of others." *Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 23 (Tex.1994). The Texas Supreme Court has explained that extreme risk "means not a remote possibility of injury or even a high probability of minor harm, but rather the likelihood of serious injury to the plaintiff." *Lee Lewis Constr., Inc. v. Harrison*, 70 S.W.3d 778, 785 (Tex. 2001). " '[A]ctual awareness,' means that the defendant knew about the peril, but its acts or omissions demonstrated that it did not care." *Id.*

Dr. Clayton's conduct was extreme and outrageous; however, there is no clear and convincing evidence in the record to support a finding that Dr. Clayton had an actual awareness that his conduct exposed Wisener to an extreme risk of substantial harm and proceeded with conscious indifference to her rights, safety, or welfare. *See Dillard Dept. Stores, Inc. v. Silva*, 148 S.W.3d 370, 373–74 (Tex.2004). Because the record is devoid of the clear and convincing evidence of malice that the statute requires, Dr. Clayton's issue regarding the sufficiency of the evidence to support a finding of malice and exemplary damages is sustained.

### EVIDENTIARY RULINGS

■ In his third issue, Dr. Clayton argues that the trial court erroneously admitted evidence of Clayton's prior sexual advances and comments toward other women. In his brief, he states that this evidence was admitted through the testimony of twelve witnesses. Wisener contends that Dr. Clayton waived any error. We agree.

■ The general rule is that error in the admission of evidence is deemed harmless and is waived if the objecting party subsequently permits the same or similar evidence to be introduced without objection. *Volkswagen of America, Inc. v. Ramirez*, 159 S.W.3d 897, 907 (Tex.2004). The record reflects that Dr. Clayton objected to some of the evidence regarding his prior conduct and that he did not object when that same testimony was elicited later during the witnesses' examination. Therefore, Dr. Clayton has waived any error regarding the admission of evidence of his prior wrongs. Dr. Clayton's third issue is overruled.

### APPLICATION OF SETTLEMENT CREDIT

■ Both parties agree that $43,020.23 is the amount that Wisener received from her settlement with Medaphis. The trial court only applied $1,000.00 from that settlement toward the judgment against Dr. Clayton. In his fourth issue, Dr. Clayton maintains that the trial court erred by applying only $1,000.00 from Wisener's previous settlement with Medaphis toward the trial court's judgment. Wisener argues that the $1,000.00 settlement credit was proper.

At the time Wisener's case was tried, a defendant could elect to have a prior settlement by a claimant credited toward a judgment in the amount of

(1) the sum of the dollar amounts of all settlements; or

(2) a dollar amount equal to the sum of the following percentages of damages found by the trier of fact:

(A) 5 percent of those damages up to $200,000.00;

(B) 10 percent of those damages from $200,000.01 to $400,000.00;

(C) 15 percent of those damages from $400,001 to $500,000.00; and

(D) 20 percent of those damages greater than $500,000.00.

Act of May 18, 1995, 74th Leg., R.S., ch. 136, § 1, 1995 Tex. Gen. Laws 974, *amended by* Act of June 11, 2003, 78th Leg., ch.

204, §§ 4.06, 4.10(4), 2003 Tex. Gen. Laws 857–58.

Section 33.014 of the Texas Civil Practice and Remedies Code mandated that if a defendant did not make an election as to how the trial court would credit a previous settlement, all defendants were considered to have elected subdivision (2) of section 33.012(b). Act of May 18, 1995, 74th Leg., R.S., ch. 136, § 1, 1995 Tex. Gen. Laws 974, *repealed by* Act of June 11, 2003, 78th Leg., ch. 204, § 4.10(6), 2003 Tex. Gen. Laws 858. Dr. Clayton did not file a written election as to which dollar credit should have been applied; therefore, he is considered to have elected a credit under subdivision (2) of section 33.012(b).

We have sustained Dr. Clayton's issues regarding the award of damages for past loss of earning capacity and exemplary damages. The only remaining amount of damages found by the trier of fact is the $20,000.00 award for mental anguish. Five percent of $20,000.00 is $1,000.00; thus, the trial court did not err by applying $1,000.00 toward the judgment as a settlement credit and awarding her $19,000.00 for mental anguish. Dr. Clayton's fourth issue is overruled.[4]

## Conclusion

The evidence adduced at trial was legally and factually sufficient to support the jury's finding that Dr. Clayton intentionally inflicted emotional distress upon Wisener and to support the jury's award of $20,000.00 for mental anguish. However, the evidence was legally insufficient to support the jury's finding that Dr. Clayton invaded Wisener's privacy by intruding on her seclusion. We also hold that the evi-

dence was legally and factually insufficient to support the jury's finding of malice and the award of exemplary damages.

Accordingly, we *affirm* the portion of the trial court's judgment awarding Wisener $19,000.00 for mental anguish. We *reverse* the portion of the judgment awarding Wisener $72,488.00 for past loss of earning capacity and $200,000.00 in exemplary damages and *render* judgment that Wisener take nothing on those damage claims.

---

4. Dr. Clayton's fifth and sixth issues address 1) the trial court's submission of damages for past loss of earning capacity and 2) its failure to order that Wisener remit the damages awarded to her for past loss of earning capac-

ity and exemplary damages. We have sustained other issues in which Dr. Clayton makes related arguments; therefore, we do not need to address his fifth and sixth issues.