

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

---

**NO. 2-07-322-CV**

---

JENNIFER FULMER                                       APPELLANT

V.

JASON MICHAEL FULMER                            APPELLEE

-----------

## FROM COUNTY COURT AT LAW NO. 1 OF WICHITA COUNTY

-----------

# MEMORANDUM OPINION[1]

-----------

## I. INTRODUCTION

Appellant Jennifer Fulmer appeals the final decree of divorce entered by the trial court. In four issues, she argues that the trial court abused its discretion by awarding Appellee Jason Michael Fulmer damages for his intentional infliction of emotional distress claim and attorney's fees because the

---

[1] *See* TEX. R. APP. P. 47.4.

evidence is legally and factually insufficient to support those recoveries.  We will reverse.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

Jennifer and Jason married in June 2002.  They were working for the same employer when, on April 7, 2006, Jennifer filed her original petition for divorce, alleging that the marriage had become insupportable because of discord or conflict of personalities.

Jennifer filed an application for a protective order and request for a temporary ex parte order about a month later seeking to prohibit Jason from committing family violence as described in section 71.004 of the family code; from communicating in any manner with her except through her attorney; and from going to or near her residences, employment, or business, among other things.  She alleged in her supporting affidavit that she was requesting a protective order because of "great fear of what [Jason] will choose to inflict upon me due to his past threats of violence and attempts of bodily injury." Specifically, she alleged, among other things, that between April 13, 2006, and May 2, 2006, Jason vandalized one of their vehicles; said they "would be enemies at war and that he would feel like running me over in his car, strangling me, [and] punching me"; and became angry while they were both at their residence, threw her purse out the front door, kicked a chair that she was

2

sitting in, yelled at her with clinched teeth, and held up a stun gun and "sparked it inches from her face." The trial court granted the temporary ex parte protective order.

Jason thereafter filed his cross-petition for divorce, alleging as grounds for the divorce that the marriage had become insupportable because of discord or conflict of personalities and that Jennifer had committed adultery. Jason further alleged a "second cause of action" for intentional infliction of emotional distress, averring that Jennifer "has committed adultery, and as part of her adulterous plans, . . . has made slanderous, false, and defamatory statements and accusations against [him]. These acts were perpetrated in an intentional and concerted effort to cause [him] to lose his job, his reputation, and to cause him serious mental anguish and humiliation." He alleged that Jennifer "had begun an affair with a married co-worker," that she "concocted a scheme to cause [him] to be fired so that he would not continue to work for the same employer," and that she "knew that if [he] were fired he would have to move out of this City and the State of Texas to find employment."

At the hearing on the protective order, Jennifer testified that Jason never physically harmed her, that she never called the police to report most of the complained of conduct set forth in her affidavit, and that she continued to associate with and call Jason despite her alleged fear of him. Jennifer also

3

admitted having sex with a co-worker. The trial court denied Jennifer's application for a protective order and dissolved the ex parte protective order.

The final trial was to the bench. Jennifer testified about her proposed distribution for the community estate and debt. She also testified that she had sex with her co-worker ten days after filing for divorce and again in the fall of 2006 and that she was terminated from her employment after the trial court denied her application for a protective order and lifted the temporary ex parte protective order. Jason submitted his proposed property and debt distribution, which included on page four a section numbered and titled, "VII. Less Reimbursements Owed to Husband from Wife." Under that heading, Jason requested $10,000 for "Civil Damages - Embarrassment and Humiliation," referencing his claim for intentional infliction of emotional distress. He also requested under that section $6,000 for attorney's fees. Jason testified about the "Embarrassment and Humiliation" that he experienced as a result of Jennifer's filing her application for a protective order in addition to his proposed distribution of the community estate and debt.

The trial court's final decree of divorce states in part that the trial court "adopts the PROPOSED PROPERTY AND DEBT DISTRIBUTION of [Jason], attached hereto[,] and makes findings of fact consistent with the calculations set forth by [Jason] in Paragraphs III, IV, V, VI, and VII of said document,"

4

which includes the "Reimbursements" section. The trial court additionally found that Jennifer "owes certain sums to [Jason] as shown on page 4 of the PROPOSED PROPERTY AND DEBT DISTRIBUTION of [Jason]" (the "Reimbursements" section) and that it grants judgment against Jennifer and in favor of Jason in the amount of $10,000. Although the trial court adopted Jason's proposed property and debt distribution, which included an award of $6,000 in attorney's fees to Jason under section VII, it provided later in the decree that "each party shall be responsible for his or her own attorney's fees incurred as a result of legal representation in this case."

The trial court entered findings of fact and conclusions of law. It found in part that Jennifer "intentionally and knowingly filed a false Application for Protective Order and, as a result, [Jason] suffered embarrassment, humiliation, mental pain and suffering[,] and injury to his reputation." The trial court later entered an additional finding of fact that the affidavit filed by Jennifer in conjunction with her application for a protective order was contradicted by her testimony at the hearing on the protective order, that she had a motive to either cause trouble for Jason or have him fired so that her relationship with her co-worker could continue without any interference by Jason, that her actions in this regard were intentional and done with the intent to cause harm to Jason,

5

that the actions caused harm to Jason, and that such actions were the proximate cause of his damages.

Jennifer filed a motion for new trial, arguing that the property division is unjust and that the evidence is legally and factually insufficient to support Jason's award for intentional infliction of emotional distress. She now appeals.

### III. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

In her second issue, Jennifer argues that the trial court abused its discretion by "ruling in [Jason's] favor on his claim for Intentional Infliction of Emotional Distress" because the evidence is legally and factually insufficient to support the trial court's findings in support of that claim.[2] Jennifer specifically attacks the sufficiency of the evidence to support the elements of Jason's intentional infliction of emotional distress claim requiring that the defendant's conduct be extreme and outrageous and that the plaintiff suffer severe emotional distress.

---

[2] Because the trial court's ruling on Jason's tort claim is separate from the trial court's property division, the appropriate standard of review is legal and factual sufficiency of the evidence, not abuse of discretion. *See* TEX. FAM. CODE ANN. § 7.001 (Vernon 2006) (providing for trial court discretion only in division of marital estate); *Twyman v. Twyman*, 855 S.W.2d 619, 625 (Tex. 1993) (holding that, to avoid double recovery, trial court may not base division of marital property and award of tort damages on same tortious conduct); *Burger v. Burger*, 02-05-00170-CV, 2006 WL 495663, at *4 (Tex. App.—Fort Worth Mar. 2, 2006, no pet.) (mem. op.).

6

**A.    Standards of Review**

Findings of fact entered in a case tried to the court have the same force and dignity as a jury's answers to jury questions. *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991). The trial court's findings of fact are reviewable for legal and factual sufficiency of the evidence to support them by the same standards that are applied in reviewing evidence supporting a jury's answer. *Ortiz v. Jones,* 917 S.W.2d 770, 772 (Tex. 1996); *Catalina v. Blasdel,* 881 S.W.2d 295, 297 (Tex. 1994).[3]

We may sustain a legal sufficiency challenge only when (1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more

---

[3] Jennifer challenges the trial court's findings that she "intentionally and knowingly filed a false Application for Protective Order and, as a result, [Jason] suffered embarrassment, humiliation, mental pain and suffering[,] and injury to his reputation" and that she "intentionally made false statements regarding [Jason] that were reasonably likely to cause injury to him and which did cause injury to him." As mentioned above, Jason pleaded a claim for intentional infliction of emotional distress, and the trial court awarded him $10,000 for that claim. To the extent these challenged findings are incomplete or do not sufficiently reflect the trial court's award for intentional infliction of emotional distress, we will imply such findings. *See Pharo v. Chambers County, Tex.*, 922 S.W.2d 945, 948 (Tex. 1996) (holding that trial court's judgment implies all findings of fact necessary to support it when no findings of fact or conclusions of law are filed).

7

than a mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact. *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 334 (Tex. 1998), *cert. denied*, 526 U.S. 1040 (1999); Robert W. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 TEX. L. REV. 361, 362–63 (1960). In determining whether there is legally sufficient evidence to support the finding under review, we must consider evidence favorable to the finding if a reasonable fact-finder could and disregard evidence contrary to the finding unless a reasonable fact-finder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 807, 827 (Tex. 2005).

When the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, the evidence is no more than a scintilla and, in legal effect, is no evidence. *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983). More than a scintilla of evidence exists if the evidence furnishes some reasonable basis for differing conclusions by reasonable minds about the existence of a vital fact. *Rocor Int'l, Inc. v. Nat'l Union Fire Ins. Co.*, 77 S.W.3d 253, 262 (Tex. 2002).

"When a court of appeals disturbs the judgment of a lower tribunal, merely saying that the court has reviewed all the evidence and reaching a conclusion contrary to that of the trier of fact is not enough. Instead, the court should explain, with specificity, why it has substituted its judgment for that of

8

the trial court." *Citizens Nat'l Bank in Waxahachie v. Scott*, 195 S.W.3d 94, 96 (Tex. 2006).

An assertion that the evidence is factually insufficient to support a fact finding means that the evidence supporting the finding is so weak or the evidence to the contrary is so overwhelming that the answer should be set aside and a new trial ordered. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965).

**B.    Legally Insufficient Evidence of Severe Emotional Distress**

Our supreme court adopted the tort of intentional infliction of emotional distress in *Twyman.*   855 S.W.2d at 621–22.   To recover under this tort, a plaintiff must prove the following: (1) the defendant acted intentionally or recklessly; (2) the conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe. *Morgan v. Anthony*, 27 S.W.3d 928, 929 (Tex. 2000); *Twyman*, 855 S.W.2d at 621; *Gonzales v. Willis*, 995 S.W.2d 729, 735 (Tex. App.—San Antonio 1999, no pet.).  The requirement that the emotional distress be "severe" means that the distress is so severe that no reasonable person could be expected to endure it without undergoing unreasonable suffering. *GTE Sw., Inc. v. Bruce*, 998 S.W.2d 605, 618 (Tex. 1999); *Clayton v. Wisener*, 190 S.W.3d 685, 695 (Tex. App.—Tyler 2005, pet. denied); *Escalante v.*

9

*Koerner*, 28 S.W.3d 641, 646 (Tex. App.—Corpus Christi 2000, pet. denied). While emotional distress includes all highly unpleasant mental reactions such as humiliation, embarrassment, anger, worry, and disappointment, any party seeking recovery for mental anguish, even when advancing a cause of action that does not require the "severe" damages required for intentional infliction of emotional distress, must prove more than mere worry, anxiety, vexation, embarrassment, or anger. *Bruce,* 998 S.W.2d at 618; *Gonzales*, 995 S.W.2d at 736; *see also Parkway Co. v. Woodruff*, 901 S.W.2d 434, 444 (Tex. 1995). Indeed, feelings of anger, depression, and humiliation are not sufficient to establish *severe* emotional distress. *Gonzales*, 995 S.W.2d at 736. And conduct is not actionable as intentional infliction of emotional distress merely because it may damage the plaintiff's reputation. *Id*. at 736–37. But proof of a physical manifestation of the emotional distress is not required. *Gorges Foodservice, Inc. v. Huerta*, 964 S.W.2d 656, 668 (Tex. App.—Corpus Christi 1997, pet. withdrawn).

Caselaw examining the severity requirement is helpful in conducting an analysis of whether a litigant has made a showing that the distress he or she suffered is so severe that no reasonable person could be expected to endure it without undergoing unreasonable suffering. In *Bruce*, the supreme court held

10

that the evidence was legally sufficient to support the jury's finding that the appellees suffered severe emotional distress, reasoning as follows:

> The employees testified that, as a result of being exposed to Shield's outrageous conduct, they experienced a variety of emotional problems, including crying spells, emotional outbursts, nausea, stomach disorders, headaches, difficulty in sleeping and eating, stress, anxiety, and depression. The employees testified that they experienced anxiety and fear because of Shield's continuing harassment, especially his charges and rages. Each employee sought medical treatment for these problems, and all three plaintiffs were prescribed medication to alleviate the problems. An expert witness testified that each of them suffered from post-traumatic stress disorder.

*Bruce*, 998 S.W.2d at 618–19. In *Clayton*, evidence that the appellee "experienced a significant degree of clinical depression and anxiety, which channeled into somatic symptoms such as headaches, gastrointestinal difficulties, sleep disturbances, weakness, or fatigue," was held to be legally sufficient evidence to support the jury's finding that the appellant caused the appellee to suffer severe emotional distress. *Clayton*, 190 S.W.3d at 696. And in *Behringer v. Behringer*, evidence that the appellee feared for his life, slept with a pistol, cried in public, and lost his appetite supported the trial court's finding that he suffered severe emotional distress. 884 S.W.2d 839, 844–45 (Tex. App.—Fort Worth 1994, writ denied).

In this case, Jason testified that the allegations made by Jennifer in her application for a protective order were false; that he was not allowed to go to

11

work for almost a week and that he was not allowed to get within two miles of the building where he worked after the trial court signed the ex parte protective order; that he could not come within ten feet of Jennifer when he was allowed to return to work; and that his boss threatened to fire him if the protective order was not released. After the trial court denied Jennifer's application for the protective order, it was a "civil war" at work because about half of the employees believed Jason and half believed Jennifer, he was reprimanded for calling another female employee, and he found his place of employment to be an "unsuitable work environment," in part because he was "frowned upon" and people were "talking about [him]." Jason was in line to be promoted but that "flew out the window with [the] protective order." According to Jason, he eventually sought employment elsewhere due to the "unacceptable" working conditions he had to endure. Jason testified that, "personally," "everybody" thought he was a "wife beater." After the trial court signed the ex parte protective order, he had to move out of his house and stay in a hotel. Jason confirmed that he was asking the trial court to award him $10,000 for the "potentially slanderous acts of [Jennifer]."

Unlike the legally sufficient evidence of severe distress produced by the plaintiffs in *Bruce*, *Clayton*, and *Behringer*, none of the evidence here describes, explains, or details any severe emotional distress that Jason personally suffered

12

as a result of Jennifer's intentional or reckless extreme and outrageous conduct. *See Bruce*, 998 S.W.2d at 618–19; *Clayton*, 190 S.W.3d at 696; *Behringer*, 884 S.W.2d at 844. Rather, all of the relevant evidence describes some event or condition—either at Jason's place of employment or residence—that occurred as a result of Jennifer filing her application for a protective order. To the extent Jason argues that any feelings of anger, humiliation, or embarrassment experienced by him can be implied by this evidence, such distress is insufficient in and of itself to establish severe emotional distress. *See Gonzales*, 995 S.W.2d at 736. Consequently, the record discloses a complete absence of evidence, or at most no more than a scintilla of evidence, that Jason experienced distress so severe that no reasonable person could be expected to endure it without undergoing unreasonable suffering. *See Bruce*, 998 S.W.2d at 618. Accordingly, the evidence is legally insufficient to establish severe emotional distress. *See, e.g.*, *Gonzales*, 995 S.W.2d at 737 (holding evidence that appellee felt embarrassed, uncomfortable, hurt, and dirty insufficient to establish severe emotional distress); *Huerta*, 964 S.W.2d at 668–69 (holding evidence that plaintiff's wife temporarily ejected him from house, that his relationship with his wife suffered, that he was unable to concentrate, that he felt insecure about his prospects for finding employment,

and that he was embarrassed legally insufficient evidence of severe emotional distress).  We sustain Jennifer's second issue.

## IV.  ATTORNEY'S FEES

In her third issue, Jennifer argues that the trial court abused its discretion by "awarding reimbursement to [Jason] for attorney's fees incurred by him during the case" because there was insufficient evidence to support the award. Jason "confesses error on this point and agrees that the award of attorney[']s fees should be stricken from the trial court's judgment."

A court may apportion attorney's fees in a divorce action as part of a just and right division of property.  *Vazquez v. Vazquez*, No. 14-05-001257-CV, 2007 WL 1745324, at *5 (Tex. App.—Houston [14th Dist.] June 19, 2007, no pet.); *Sandone v. Miller-Sandone*, 116 S.W.3d 204, 208 (Tex. App.—El Paso 2003, no pet.).  As a general rule, the party seeking to recover attorney's fees carries the burden of proof.  *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 10 (Tex. 1991).  The reasonableness of the fee is a question of fact that must be supported by evidence.  *Sandone*, 116 S.W.3d at 208.

Here, the divorce decree provides that each party is responsible for his or her own attorney's fees, but it also expressly adopted Jason's proposed distribution, which provides that Jason is entitled to $6,000 for attorney's fees. To the extent the decree awards Jason any attorney's fees, there is no

14

evidence regarding the amount of time spent by Jason's attorney to prepare for the case, the hourly rate charged by Jason's attorney, or the reasonableness and necessity of the fees charged by Jason's attorney. The only evidence relating to attorney's fees was Jason's testimony that he paid his attorney $2,500 to represent him in the application for a protective order matter and $3,500 to represent him in the divorce. In the absence of evidence demonstrating the reasonableness and necessity of the fees, the trial court abused its discretion by awarding Jason $6,000 in attorney's fees. *See Vazquez*, 2007 WL 1745324, at *5 (holding that trial court abused its discretion by awarding attorney's fees because party presented no evidence of attorney's fees); *see also Lewis v. Lewis*, No. 01-98-00354-CV, 1999 WL 442176, at *1 (Tex. App.—Houston [1st Dist.] July 1, 1999, no pet.) (holding that trial court erred by awarding attorney's fees because party presented no evidence that fees were the usual, customary, and reasonable charge for attorney's fees in divorce case). Accordingly, we sustain Jennifer's third issue.

We do not reach Jennifer's fourth issue because it is contingent on a determination by us that the evidence is sufficient to support the intentional infliction of emotional distress award, which we have not determined. *See* TEX. R. APP. P. 47.1. And Jennifer only sets forth the standards of review in her first issue; she requests no relief.

15

## V. CONCLUSION

Having sustained Jennifer's second issue, we reverse that portion of the divorce decree awarding Jason $10,000 for his intentional infliction of emotional distress claim and render judgment that Jason take nothing on that claim. Having sustained Jennifer's third issue, we reverse that portion of the divorce decree awarding Jason $6,000 for attorney's fees. We affirm the remainder of the judgment.

PER CURIAM

PANEL F: HOLMAN, DAUPHINOT, and GARDNER, JJ.

DELIVERED: July 10, 2008

16